IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EARL GRANT, | CIVIL DIVISION |
| Plaintiff, | Case No. 3:23-cv-156 |
| v. | |
| MULTI-COLOR CORPORATION t/d/b/a MCC Premium Label Solutions, | |
| Defendant. | |

**COMPLAINT AND JURY DEMAND**

A.   *<u>Preliminary Statement</u>*

1.   The plaintiff Earl Grant brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* to redress violations of his right to be free from employment discrimination, harassment and retaliation based upon his race. Because of the violations described herein, this Court is also empowered to exercise pendant jurisdiction pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* A jury trial is demanded.

B.   *<u>Jurisdiction</u>*

2.   The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e *et seq.*, 28 U.S.C. § 1331 and under the doctrine of pendant jurisdiction.

3.   On or about February 28, 2023, the plaintiff filed a timely charge alleging discrimination with the Equal Employment Opportunity Commission ("EEOC"), docketed at 533-2023-01200. This charge was simultaneously cross-filed with the Pennsylvania Human Relations Commission.

4.   The EEOC issued a Notice of Right to Sue dated June 6, 2023.

5.   This Complaint is filed within 90 days of receipt by the plaintiff of the Notice of Right to Sue.

C.   **_The parties_**

6. The plaintiff is an adult individual who resides in Altoona, PA (Blair County).

7. The defendant Multi-Color Corporation t/d/b/a MCC Premium Label Solutions ("MCC") is an entity doing business in the Commonwealth of Pennsylvania. At all times material, the defendant had a place of business located at within this district, specifically 1395 S. Eagle Valley Road, Tyron, Blair County, PA 16686.

8. At all times material, the defendant employed more than fifteen employees.

9. The defendant was the plaintiff's employer and is an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(b).

D.   **_Factual Background_**

10. The plaintiff was employed by MCC from approximately October 5, 2020 through February 6, 2023. He initially worked for MCC as a temporary employee, placed through Manpower Group, from approximately March 2020 through the date of his hire by MCC on October 5, 2020.

11. The plaintiff was employed as a material handler in the finishing department. His duties included operating a forklift, loading trucks, wrapping material, and moving product to the machine operators.

12. The plaintiff performed all the functions of his job in a competent fashion and was a good worker.

13. The workforce at the Tyrone, PA facility was primarily Caucasian; the plaintiff was one of very few African Americans who worked there.

14. While the plaintiff was employed by MCC, he was subjected to a hostile work environment in the workplace on account of his race, including being harassed by Caucasian co-

workers, being treated differently in the terms and conditions of his employment than similarly situated Caucasian employees and his work was subjected to heightened scrutiny. Some examples follow (this is not an exhaustive list):

(a) Matt [last name unknown] (Caucasian) repeatedly knocked over the plaintiff's work and, when the plaintiff said something about it, Matt would threaten him, saying things, "hey, you want a piece of me?"

(b) Early in his employment, the plaintiff did not have an assigned forklift, so he had to share one with Richard [last name unknown] (Hispanic). Richard often hid the key to the forklift so that the plaintiff could not use it when Richard wasn't using it.

(c) The plaintiff was subjected to insults throughout his workday by Caucasian employees. They called him asshole, dickhead, and faggot. In August 2022, John Savage (Caucasian) told the plaintiff, "A monkey could work better than you!"

(d) The plaintiff was mocked by Caucasian employees in the breakroom.

(e) In approximately December 2021, the plaintiff found that someone had placed cayenne pepper in his jacket pocket. The plaintiff reported this malicious prank to Ben [last name unknown] (Caucasian), the safety person, who promised to look into it. However, nothing was done, and, to the plaintiff's knowledge, no one was disciplined.

(f) On multiple occasions between approximately January 2022 through April 2022, the maintenance man would take the forklift assigned to the plaintiff and would not bring it back to him, slowing down the plaintiff's ability to get his work completed.

(g) In 2021, Ted [last name unknown] (Caucasian), took the forklift key out of the forklift while the plaintiff was using it, causing the forklift to become inoperable. The plaintiff reported this to HR, but nothing was done about Ted's improper interference with the plaintiff's work.

(h) On numerous occasions throughout the plaintiff's employment, John Savage walked in front of or beside the plaintiff's forklift while the plaintiff was operating it to make it appear that the plaintiff was getting too close to him and/or operating it unsafely.

(i) In approximately July 2022, Savage put water in a container in the dumpster so that when the plaintiff emptied the dumpster into the bailor, water splashed all over him.

(j) On repeated occasions from approximately July through December 2022, Gordon [last name unknown] (Caucasian), took the plaintiff's work items and tools and hid them. The plaintiff made repeated complaints to HR about Gordon's pranks, but nothing was done.

(k) On repeated occasions from approximately July through December 2022, Bryce [last name unknown] (Caucasian), knocked over the plaintiff's work and took the propane tank off of his forklift.

(l) On repeated occasions from approximately July through December 2022, Bryce hid the plaintiff's forklift while the plaintiff was on a break, forcing the plaintiff to search the facility to find it. Other co-workers also hid the plaintiff's forklift from time to time.

(m) In approximately July 2022 Beth [last name unknown] (Caucasian), took the shipping key from the plaintiff and told him that he could the use shipping door, although similarly situated Caucasian coworkers were permitted to.

(n) On approximately January 25 or 26 2023, Gordon raised the forklift forks dangerously close to the plaintiff's head while his back was turned. This is an explicit violation of safety procedures regarding the use of forklifts and could have resulted in serious personal injury. As detailed below, the plaintiff turned in an incident report because of the violation and because he was concerned about his own safety. To the plaintiff's knowledge, Gordon was not disciplined for this safety infraction.

(o) The plaintiff's co-workers filed numerous incident reports against the plaintiff that were untrue and unsubstantiated. The did not like working with an African American man and did everything they could to get him fired.

15. The plaintiff brought this disparate and discriminatory treatment to the attention to HR and management on several occasions, including and in addition to the references made above. Further, on several occasions, he explicitly told HR/management that the harassment was being done on account of his race. HR and management did not take his complaints seriously, did not investigate them and did not do anything to remedy the situation. Often, the plaintiff's supervisors would brush off the plaintiff's entreaties and instead threatened to send the plaintiff home if he did not drop the matter.

16.     On January 31, 2023, Ted threatened to fight the plaintiff outside of work because the plaintiff was swapping out a pallet near Ted's work area. Ted was yelling loudly and other workers gathered to watch – perhaps hoping for a fight. Brandon [last name unknown] (Caucasian), a manger, came out and told the plaintiff to park the forklift immediately. There were still a lot of workers in the area, but the plaintiff did as he was told.

17.     An HR representative instructed the plaintiff to write up an incident report regarding what had happened. Initially, the plaintiff was reluctant to do so because he figured that anything that he wrote would be used against him by management. Jeremy [last name unknown] (Caucasian), the general manager, called the plaintiff up to his office and showed him the video of the plaintiff parking the forklift while other employees were in the area. Jeremy told the plaintiff that was unsafe and constituted a violation.

18.     The plaintiff was told to punch out and go home for the rest of the day. Upon information and belief, Ted was not disciplined for threatening to engage in physical violence. The plaintiff asked for a couple of days off because the altercation had really rattled him. Gregg [last name unknown] (Caucasian), the plant manager, approved the request, apparently happy to get the plaintiff out of the workplace for a while.

19.     The next day, February 1, 2023, the plaintiff went to the facility to write up the incident report. Greg was surprised to see the plaintiff at the workplace and sent him to an office to do the report. The plaintiff decided to include the incident involving Gordon raising the forklift forks near the plaintiff's head, referred to in ¶ 5(n) above. About 15 minutes later, as the plaintiff was still working on the report, Gregg and Kimmy [last name unknown] (Caucasian), from HR, came in and told the plaintiff that he was suspended until an investigation was completed.

20. The plaintiff complied with the order and went home.

21. On approximately February 3, 2023, the plaintiff called Kimmy about the status of the investigation. She told him that it was not done yet and that it would probably be completed by Monday, February 6, 2023. She scheduled a conference call with the plaintiff for that afternoon.

22. During the ensuing conference call, attended by the plaintiff, Kimmy, Jeremy, and Greg. Jeremy told the plaintiff that his employment was being terminated effective immediately because of the safety violation (operating the forklift too close to co-workers as he was parking it). Jeremy also referred to other incident reports that had been filed against the plaintiff by his co-workers.

23. The reason given for the plaintiff's termination was nothing more than a pretext and the real reason that he was fired was because of his race. Similarly situated Caucasian employees were not terminated for an alleged safety violation that did not result in any injury or property damage. Further, similarly situated Caucasian employees were given a pass even in when an injury was involved. For example, a similarly situated Caucasian employee actually ran over a co-worker's foot with a forklift and the only disciplinary action taken against him was that he was not permitted to operate a forklift for three days.

24. Further, the plaintiff was terminated in retaliation for raising complaints about being discriminated against because of his race.

## FIRST CAUSE OF ACTION

25. The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

26. The plaintiff is African American and thus is protected against discrimination, harassment and retaliation on the basis of his race pursuant to Title VII.

27. The plaintiff was qualified for his position.

28. While employed, the plaintiff was subjected to harassment on account of his race.

29. Despite his qualifications, the plaintiff was terminated. The reasons given for his discharge were a pretext.

30. The defendant's discharge of the plaintiff was because of his race and in retaliation for raising issues relating to discrimination to management in violation of Title VII.

31. In addition, the plaintiff was terminated in retaliation for raising complaints about being discriminated against because of his race.

32. The defendant's violation of Title VII was committed with intentional or reckless disregard for the plaintiff's federally protected right to work in an environment free of race discrimination.

## SECOND CAUSE OF ACTION

33. The preceding paragraphs are incorporated herein by reference as if they were fully set forth herein.

34. As a direct and proximate cause of its actions, detailed above, the defendant has violated the plaintiff's right to be free from discrimination and retaliation under the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951 *et seq.*

WHEREFORE, the plaintiff respectfully requests judgment be entered in his favor and against the defendant and that the defendant be required to provide all appropriate remedies under Title VII and the PHRA, including attorney's fees and costs.

Respectfully submitted,

*/s/ Michael J. Bruzzese*
Michael J. Bruzzese
Pa. I.D. No. 63306
220 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219
(412) 281-8676

Counsel for the plaintiff

Dated: July 13, 2023